**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTINE MORALES, VANESSA WILLIAMS, and CARLY CHARALAMBOU on behalf of themselves and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SPORTSENGINE, INC., <br><br> Defendant. | Civil Action No. 24-cv-2971 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

Plaintiffs Christine Morales, Vanessa Williams, and Carly Charalambou ("Plaintiffs"), on behalf of the putative Class, by their undersigned counsel, and for their Class Action Complaint against Defendant SportsEngine, Inc., allege as follows:

## PRELIMINARY STATEMENT

1.      This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant SportsEngine, Inc. ("Defendant" or "SportsEngine") arising from its deceptive and unfairly disclosed junk "Online Processing Fee" assessed on recreational sport registrations completed via Defendant's software.

2.      Youth sports are an integral part of the lives of many American families, but in recent years the costs of participating in youth sports has risen steeply. One reason is that private companies have become involved in the administration of youth sports, oftentimes forcing families to pay junk fees or forgo participating in youth sports altogether.

3.      SportsEngine offers sports management technology services to youth sports organizations throughout the United States. As part of its service, it provides youth sports leagues with an online enrollment platform through its SportsEngine service. The SportsEngine service is paid for by the youth sports organization that seeks to use the software, and parents or guardians of youth players are then instructed that they *must* use the SportsEngine service to register their children in the organization's sports offerings. SportsEngine makes it infeasible for parents or guardians from signing up in alternative manners that would allow them to avoid paying the Online Processing Fee. Through such agreements, SportsEngine acquires a captive audience of families who have no choice but to use their services.

4.      It then imposes undisclosed, deceptive, and unfair junk fees on families who have no choice but to pay them. By this conduct, SportsEngine has engineered a "pay junk fees to play" scheme. Kids can't play their chosen youth sports unless their parents pay the junk fee unilaterally set by Defendant with zero relationship to the service actually being provided.

5.      Throughout the entirety of the youth sports enrollment process, SportsEngine displays a single price for registration for a youth sport to the parent or guardian, without any additional fee.  Reasonable consumers like Plaintiff proceed through check out without ever becoming aware of any additional fees assessed by Defendant.

6.      Then, at checkout, and only after consumers have completed a comprehensive enrollment process wherein a single price for the sport is displayed, SportsEngine surreptitiously imposes a so called "Online Processing Fee," which amounts to a percentage of the cost of the sport. The Online Processing Fee is added very late in the registration process in order to ensure it is unseen by consumers like Plaintiff.

7.      It is false and deceptive for Defendant to surreptitiously add a "Online Processing Fee" at the end of the enrollment process, especially where it offers no explanation of the Online Processing Fee at any time during the enrollment or checkout process. The "Online Processing Fee" is only added without comment or description as a line item just before a purchase is completed after a multi-step process without any mention of the fee.

8.      Worse, the Online Processing Fee itself is a sham, a classic "junk fee." The "online processing" provided by SportsEngine, which is signing up for and managing communications regarding youth sports, is the entire service that SportsEngine provides—and it is a service that the youth sports leagues are already paying Defendant for. There is no additional "online processing" service provided to parents or guardians who register. The Online Processing Fee is merely a second payment—in the form of a junk fee—for the service that the sports leagues are already paying for.

9.      By hiding the mis-named and deceptive fee at the very last step of the sale, Defendant has raked in millions of dollars in Online Processing Fees at the expense of consumers stuck with no other choice for registering their child for a sport.

10.     As a result of Defendant's unfair and deceptive conduct, Plaintiff and the proposed class have suffered damages. They purchased sports enrollments they otherwise may not have bought and paid fees they otherwise would not have paid, had they not been drawn in by Defendant's deceptive bait-and-switch scheme.

11.     Plaintiff seeks damages and, among other remedies, injunctive relief that fairly allows consumers to decide whether they will pay the so-called Online Processing Fee.

**PARTIES**

12.    Plaintiff Christine Morales is a resident and a citizen of Eastvale, California.

13.    Plaintiff Vanessa Williams is a resident and a citizen of Jonesboro, Arkansas.

14.    Plaintiff Carly Charambalou is a resident and citizen of Brookline, Massachusetts.

15.    Defendant SportsEngine, Inc. is a software provider for various sports leagues throughout the United States, including youth sports organizations. It is headquartered in Minneapolis, Minnesota.

**JURISDICTION AND VENUE**

16.    This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction because

    a.   the proposed Class is comprised of at least 100 members; § 1332(d)(5)(B)

    b.   at least one member of the proposed class is a citizen of a State other than New York, § 1332(d)(2)(A); and

    c.   the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs. § 1332(d)(2), (6).

17.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because SportsEngine is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

18.    Defendant's Terms of Use specifies that actions regarding the Terms of Use must be brought in New York County, New York.

4

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A.        Overview of SportsEngine's Software

19.        Society recognizes participation in youth sports as an important component of raising physically and mentally healthy children.

20.        According to the Aspen Institute's Project Play Annual Report for 2023, children who are physically active reported more excitement, happiness and motivation, and those who are inactive reported greater nervousness, anxiety, worry and depression.  See Aspen Institute, State of Play 2023 Report, available at https://projectplay.org/state-of-play-2023/health-trends.

21.        Due to the high cost of youth sports, low-income families struggle to afford the costs to participate. Half of survey respondents who played youth sports or who have children who have played said they have struggled to afford the costs to participate. The issue impacts a broad swath of Americans of all backgrounds, including 66% who are Latino/a, 62% of 35-49-year-olds, 58% of those with high school educations, and 57% of lower-income adults. See Aspen Institute, State of Play 2023 Report, available at https://projectplay.org/state-of-play-2023/costs-to-play-trends.

22.        Through its deceptive late addition of a so-called "Online Processing Fee", SportsEngine unfairly increases costs for those already struggling to afford the benefits of youth sports.

23.        Defendant SportsEngine offers its technology service to youth sports organizations. At issue in this complaint is SportsEngine's player registration technology service.

24.        The SportsEngine software is used by sports organizations across the country as a tool to register for children for youth sports including but not limited to soccer, baseball, softball, football, flag football, basketball, volleyball, hockey, lacrosse, sports camps, and wrestling.

**B.      SportsEngine Markets Services to Youth Sports Organizations**

25.      Youth sports organizations engage SportsEngine to manage registration for their members.

26.      SportsEngine markets heavily to such organizations, promising ease and convenience for the youth sports organization, including online and electronic management of registration and payments.

27.      Youth sports organizations pay SportsEngine for these services, usually in the form of an annual subscription and payment processing charges.

28.      Youth sports organizations are not reasonably informed that SportsEngine will assess their registrants *additional* junk fees for using the very service the youth sports organization is already paying SportsEngine for.

29.      Once engaged by the youth sports organization, sign ups and communications for that organization then occur on the SportsEngine platform.

**C.      Consumer Registration Process**

30.      When a consumer registers their child for a sport using software provided by SportsEngine, the consumer must create an account that is powered by SportsEngine software. In order to do so, the consumer enters in their name and contact information.

31.      When consumers create an account, they agree to be bound by the Terms of Use:



32.     The Terms of Use do not authorize SportsEngine to charge Online Processing Fees and in fact make no mention whatsoever of such fees.

33.     In fact, the Terms of Use state only that fees may be assessed for monthly and annual subscriptions to additional services provided by SportsEngine—not merely registering a child to play a sport:

> We may provide some of the SportsEngine Services to you free of charge, while other SportsEngine Services require you to sign up for a subscription and pay a periodic subscription fee (e.g., monthly or annually (the "SportsEngine Subscription Services").

Ex. A, p. 9.

**B.      SportsEngine's Online Processing Fee Scheme.**

34.     SportsEngine charges consumers a hidden Online Processing Fee beyond the advertised price of the sport. The hidden Online Processing Fee is not disclosed when the initial

7

sport price is displayed. In fact, SportsEngine does not disclose the Online Processing Fee to consumers until the very last step in the purchase – after the consumer has already gone through several steps to commit to the purchase of registering for the youth sport.

35.     To make matters worse, even at the point of purchase, SportsEngine still does not disclose the purpose of the Online Processing Fee. That is, of course, because the Online Processing Fee has no real purpose where the sports league itself is paying for use of SportsEngine software. The Online Processing Fee is not tethered to any actual "online processing" or expense. Instead, the Online Processing Fee is a pure profit-generator.

36.     Here is how SportsEngine's deception works: When registering a child for youth sports, consumers must create an account. Then, consumers input their child's personal information, their child's team preferences, and decided whether to purchase gear. Throughout that process, a single price for the youth sport is displayed. After the consumer navigates this multi-step series of screens, the consumer is presented with a screen that purports to shows the cost of the youth sport, along with a mandatory requirement that the user "PAY ONLINE IN FULL".



37.     On the subsequent screen wherein the consumer "Reviews" the registration, the price displayed still does not include a "Online Processing Fee".

38.     Only at the very end of the registration process are consumers, for the very first time and hidden as a line item, informed of the "Online Processing Fee":



39.     Thus, by the time consumers are confronted with a total price that includes the added Online Processing Fee, consumers have already taken several steps to commit to the transaction including creating account, inputting personal information about their children, inputting team preferences and playing positions, and deciding whether to purchase sport related gear.

40.     The "Online Processing Fee" is never reasonably disclosed to consumers until it shows up as a line item in their shopping cart—after the purchase process is largely complete. This process fails to provide an adequate advance warning to customers that an Online Processing Fee will be imposed on their purchases.

**C.     The Online Processing Fee is a Junk Fee That Violates Federal Guidance.**

41.     SportsEngine's Online Processing Fee is precisely the type of "Junk Fee" that has come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition, March 5, 2024, available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3

42.     As the Federal Trade Commission said recently in its effort to combat Junk Fees,

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Federal Trade Commission, <u>FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees</u>, , October 11, 2023, available at <u>https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees</u>.

43.     In its own effort to combat junk fees, the State of New York recently passed N.Y. Arts & Cult. Aff. Law § 25.07 concerning fees associated with tickets to sports and concerts. Under that law, "[t]he price of the ticket shall not increase during the purchase process, excluding reasonable fees for the delivery of non-electronic tickets based on the delivery method selected by the purchaser, which shall be disclosed prior to accepting payment therefor." N.Y. Arts & Cult. Aff. Law § 25.07(4). Accordingly, if the consumer selects to purchase a ticket electronically, at the start of the transaction, the total ticket price shall not increase during the period it takes the consumer to purchase the ticket (e.g., finish the online transaction).  The "All-In Price" must be disclosed to the consumer before the consumer selects the ticket for purchase. Similarly here, the "All-In Price" should have been displayed to the consumer throughout the enrollment process.

44.     In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising, the FTC makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy – for example, before the consumer "add[s] to shopping cart." See Fed. Trade Comm'n, <u>.com Disclosures: How to Make Effective Disclosures iN Digital Advertising</u> at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf

45.     Defendant violates federal guidance by adding the Online Processing Fee as a line item well after the consumer "add[s] to shopping cart", and by failing to disclose the nature of the Online Processing Fee and whether consumers are getting any benefit at all from the fee charged. Worse yet, there is no actual "processing" performed where the youth sports league itself pay for SportsEngine's service.

46.     The Online Processing Fee provides no additional value to consumer not already paid for by the league they are signing up for.

47.     The Online Processing Fee itself is a sham, a classic "junk fee." The online processing provided by SportsEngine, which is signing up for and managing communications regarding youth sports online, is a service that the youth sports leagues are already paying Defendant for. There is no additional "processing" provided to parents or guardians who register. The Online Processing Fee is merely a second payment—in the form of a junk fee—for the service that the sports leagues are already paying for.

48.     Parents or guardians of youth players are then instructed that they *must* use SportsEngine service to register their children in the organization's sports offerings. SportsEngine prohibits parents or guardians from signing up in alternative manners that would allow them to avoid paying the Online Processing Fee. Through such agreements, SportsEngine acquires a captive audience of families who have no choice but to use their services.

49.     Defendant imposes undisclosed, deceptive, and unfair junk fees on families who have no choice but to pay them. By this conduct, SportsEngine has engineered a "pay junk fees to play" scheme. Kids can't play their chosen youth sports unless their parents pay the junk fee unilaterally set by Defendant with zero relationship to the processing actually being provided.

E.     **Plaintiff Morales' Experience**

50.     On or about July 11, 2023, Plaintiff Morales registered her child to play basketball through youth sports organization National Junior Basketball for the stated price of $237.

51.     At the time she completed the registration, the Online Processing Fee was hidden and not displayed until the ordering process was substantially complete. The Online Processing Fee amounted to $8.70.

52.     Plaintiff did not notice that Defendant had increased the price of the transaction at the last minute.

53.     Had Defendant disclosed the Online Processing Fee at an earlier time in the enrollment process, and disclosed the nature of the Online Processing Fee, Plaintiff Morales may have made a different choice with respect to whether to use SportsEngine to enroll in the youth sport and would have inquired with the league regarding registration by alternate means.

F.     **Plaintiff Williams' Experience**

54.     On or about July 20, 2022, Plaintiff Williams registered her child to play soccer through youth sports organization Arkansas Revolution FC.

55.     At the time she completed the registration, the Online Processing Fee was hidden and not displayed until the ordering process was substantially complete. The Online Processing Fee amounted to $7.80.

56.     Had Defendant disclosed the Online Processing Fee at an earlier time in the enrollment process, and disclosed the nature of the Online Processing Fee, Plaintiff Williams may have made a different choice with respect to whether to use SportsEngine to enroll in the youth sport and would have inquired with the league regarding registration by alternate means.

**G.     Plaintiff Charalambou's Experience**

57.     On or about October 11, 2022, Plaintiff Charalambou registered her child to play soccer through Chestnut Hill Soccer Club.

58.     At the time she completed the registration, the Online Processing Fee was hidden and not displayed until the ordering process was substantially complete. The Online Processing Fee amounted to $10.

59.     Had Defendant disclosed the Online Processing Fee at an earlier time in the enrollment process, and disclosed the nature of the Online Processing Fee, Plaintiff Charalambou may have made a different choice with respect to whether to use SportsEngine to enroll in the youth sport and would have inquired with the league regarding registration by alternate means.

## CLASS ALLEGATIONS

60.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements.

> All persons who, during the applicable statute of limitations, were charged an Online Processing Fee by Defendant.

61.     Plaintiffs also bring alternative state subclasses on behalf of California, Arkansas, and Massachusetts residents.

62.      The Nationwide Classes and alternative state subclass defined above are collectively referred to herein as the "Classes." Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

14

63.    Excluded from the Classes are Defendant, its consumers, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all personal accountholders who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

64.    The members of the Classes are so numerous that joinder is impractical.  The Classes consist of at least thousands of members, the identity of whom is within the knowledge of, and can be ascertained only by resort to, Defendant's records.

65.    The claims of the representative Plaintiffs are typical of the claims of the Classes he seeks to represent in that the representative Plaintiffs, like all members of the Classes, were charged improper and deceptive fees as alleged herein. The representative Plaintiffs, like all members of the Classes, were damaged by Defendant's misconduct in that they were charged hidden Online Processing Fees. Furthermore, the factual basis of Defendant's misconduct is common to all members of the Classes and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes. And Defendant has no unique defenses that would apply to Plaintiff and not the Classes.

66.    There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual members of the Classes.

67.    The questions of law and fact common to the Classes include, but are not limited to, the following:

      a.    Whether Defendant's assessment of Online Processing Fees was unfair, deceptive, or misleading;

      b.    The proper method or methods by which to measure damages and/or restitution

and/or disgorgement; and

c.      Whether Plaintiffs and the Classes are entitled to declaratory and injunctive relief and the nature of that relief.

68.     Plaintiffs' claims are typical of the claims of other members of the Classes, in that they arise out of the same wrongful Online Processing Fee policies and practices. Plaintiffs have suffered the harm alleged and has no interests antagonistic to the interests of any other member of the Classes.

69.     Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, consumer class actions against financial institutions.  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

70.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual member of the Classes' claim is small relative to the complexity of the litigation, and due to the financial resources of Defendant, no member of the Classes could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the members of the Classes will continue to suffer losses and Defendant's misconduct will proceed without remedy.

71.     Even if members of the Classes themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits,

16

and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

72.     Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

73.     Defendant has acted or refused to act on grounds generally applicable to each of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Classes as a whole.

74.     All conditions precedent to bringing this action have been satisfied and/or waived.

75.     Application of New York law to the nationwide class is neither arbitrary nor unfair because New York has a significant interest in the claims of Plaintiffs and the class.  Moreover, Defendant's Terms of Use specify New York law applies to Plaintiffs' claims.

76.     The State of New York has a significant interest of regulating the conduct of businesses within its borders.

77.     Given New York's significant interest in regulating the conduct of businesses within its borders, choice of law principles dictate New York law should apply even to out-of-state residents.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Deceptive Acts or Practices – N.Y. Gen. Bus. Law § 349
### (On Behalf of Plaintiffs and the Class)

78.　　The preceding allegations are incorporated by reference.

79.　　This cause of action is asserted on behalf of the Class, whose members enjoy the protections of Arti N.Y. GEN. BUS. LAW § 349 *et seq.*, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. GEN. BUS. LAW § 349(a).

80.　　Defendant's policies and practices complained of herein were and are consumer-oriented, in that they affect all consumers who maintain checking accounts with Defendant.

81.　　The policies and practices were and are misleading in a material respect, because Defendant hid its Online Processing Fee until the very end of the registration process, often causing consumers to miss its assessment entirely. Moreover, consumers are not paying for any online processing where the youth league itself is paying for SportsEngine's service.

82.　　Had Plaintiffs and the members of the Class known they could be charged Online Processing Fees, they may have made different purchasing decisions.

83.　　Plaintiffs and members of the Class were injured as a result of Defendant's policies and practices, in that they paid the unfairly assessed Online Processing Fees.

84.　　Defendant's actions were willful and knowing.

85.　　As redress for Defendant's repeated and ongoing violations of this consumer protection statute, Plaintiffs and the other members of the Class each seek actual damages, treble damages, statutory damages, injunctive relief, and attorney's fees and costs.

**SECOND CLAIM FOR RELIEF**
**False Advertising – N.Y. Gen. Bus. Law § 350**
**(On Behalf of Plaintiff and the Class)**

86.     The preceding allegations are incorporated by reference.

87.     N.Y. Gen. Bus. Law § 350 provides that "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

88.     Defendant's actions regarding the Online Processing Fee, as described herein, constitute false advertising in the conduct of the business trade or commerce of youth sports.

89.     Plaintiffs and the class have been injured by Defendant's violations of N.Y. Gen. Bus. Law § 350.

90.     Defendant's false advertising occurred, and continues to occur, in the course of Defendant's business.

91.     As an actual and proximate result of Defendant's misconduct, Plaintiffs and the Class were injured and suffered damages.

92.     As redress for Defendant's repeated and ongoing violations of this consumer protection statute, Plaintiffs and the other members of the Class each seek actual damages, treble damages, statutory damages, injunctive relief, and attorney's fees and costs.

## THIRD CLAIM FOR RELIEF
### Unjust Enrichment
### (On behalf of the Class)

93.     The preceding allegations are incorporated by reference.

94.     To the detriment of Plaintiffs and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

95.     Plaintiffs and the Class conferred a benefit on Defendant when they paid Defendant the Online Processing Fee, which they did not agree to and could not reasonably avoid.

96.     Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

97.     Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

98.     Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## FOURTH CLAIM FOR RELIEF
### Violation of California's Unfair Competition Law
### (Cal. Bus. & Prof. Code § 17200, et seq.)
### (On Behalf of Plaintiff Morales and the California Subclass)

99.     Plaintiff Morales hereby incorporates by reference the preceding paragraphs.

100.     Defendant's conduct described herein violates the Unfair Competition Law ("UCL"), codified at California Business and Professions Code section 17200, *et seq*.

101.     The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

20

102.    The UCL imposes strict liability. Plaintiff Morales need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

103.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

104.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

105.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

106.    Defendant committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly misrepresenting that the presence and nature of its Online Processing Fees.

107.    Defendant's acts and practices offend an established public policy of truthful advertising in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

108.    The harm to Plaintiff Morales and the California Subclass outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

109.    Defendant's conduct also constitutes an "unlawful" act under the UCL because it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1750, *et seq.*.

110.    Defendant's business practices have misled Plaintiff Morales and the proposed California Subclass and, unless enjoined, will continue to mislead them in the future.

111.    Plaintiff Morales relied on Defendant's misrepresentations in making her purchase.

112.    By falsely marketing its sports enrollment practices, Defendant deceived Plaintiff Morales and California Subclass members into making purchases they otherwise would not make.

113.    As a direct and proximate result of Defendant's unfair, fraudulent, and unlawful practices, Plaintiff Morales and California Subclass members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and presents a continuing threat to Plaintiff Morales and California Subclass members that they will be deceived. Plaintiff Morales desire to conduct further business with Defendant but cannot rely on Defendant's representations unless an injunction is issued.

114.    As a result of its unfair, fraudulent, and unlawful conduct, Defendant has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff Morales and California Subclass members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

115.    Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff Morales and the members of the California Subclass, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

116.    Plaintiff Morales has no adequate remedy at law in part because Defendant's conduct is continuing. Plaintiff Morales therefore seeks an injunction on behalf of the general public to prevent Defendant from continuing to engage in the deceptive and misleading practices described herein.

**FIFTH CLAIM FOR RELIEF**
**False and Misleading Advertising**
**(Bus. & Prof. Code §§ 17500, et seq.)**
**(On Behalf of Plaintiff Morales and the California Subclass)**

117.    Plaintiff Morales hereby incorporates by reference the preceding paragraphs if fully restated here.

118.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code section 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

119.    Defendant's material misrepresentations and omissions alleged herein violate Business and Professions Code section 17500.

120.    Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

121.    Pursuant to Business and Professions Code sections 17203 and 17500, Plaintiff Morales and the members of the California subclass, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their deceptive practices.

122.    Further, Plaintiff Morales requests an order awarding Plaintiff Morales and California subclass members restitution of the money wrongfully acquired by Defendant by means

23

of said misrepresentations.

123.    Additionally, Plaintiff Morales and the California subclass members seek an order requiring Defendant to pay attorneys' fees pursuant to California Civil Code section 1021.5.

**SIXTH CLAIM FOR RELIEF**
**Violation of Arkansas Deceptive Trade Practices Act,**
**Ark. Code Ann. § 4-88-101, *et seq*.**
**(On Behalf of Plaintiff Williams and the Arkansas Subclass)**

124.    Plaintiff Williams incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

125.    The Arkansas Deceptive Trade Practices Act ("ADTPA") is designed to protect consumers from deceptive, unfair, and unconscionable trade practices. The ADTPA is a remedial statute which is to be liberally construed in favor of consumers.

126.    Defendant's wrongful actions as described herein violate the ADTPA, specifically Ark. Code Ann. § 4-88-107(a)(10).

127.    As detailed herein, Defendant has violated (and continues to violate) Ark. Code Ann. § 4-88-107(a)(10) by unfairly, unconscionably, and deceptively assessing and collecting Online Processing Fees.

128.    As a result, Plaintiff Williams and the Arkansas Subclass have suffered actual financial loss proximately caused by Defendant's unlawful conduct. Plaintiff Williams and the Arkansas Subclass have suffered actual financial loss proximately caused by her reliance on First Financial's unlawful conduct.

129.    Accordingly, Plaintiff is entitled to recover her damages, attorneys' fees, and costs pursuant to A.C.A. § 4-88-113.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the members of the Class seek an Order:

1.      Certifying the proposed Class pursuant to Rule 23;

2.      Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

3.      Declaring the Defendant has committed the violations of law alleged herein;

4.      Providing for any and all injunctive relief the Court deems appropriate;

5.      Awarding statutory damages in the maximum amount for which the law provides;

6.      Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

7.      Providing for any and all equitable monetary relief the Court deems appropriate;

8.      Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

9.      Awarding Plaintiffs their reasonable costs and expenses of suit, including attorneys' fees;

10.     Awarding pre- and post-judgment interest to the extent the law allows; and

11.     Providing such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all issues so triable.

Dated: April 19, 2024                    Respectfully submitted,

**REESE LLP**

*/s/ Michael R. Reese*
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Tel: (212) 643-0500
*mreese@reesellp.com*

Jeffrey D. Kaliel
KALIELGOLD PLLC
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Tel: (202) 350-4783
*jkaliel@kalielpllc.com*

Sophia Goren Gold
KALIELGOLD PLLC
950 Gilman Street, Suite 200
Berkeley, CA 94710
Tel: (202) 350-4783
*sgold@kalielgold.com*

*Counsel for Plaintiffs and the Proposed Classes*